# In the United States Court of Federal Claims

No. 19-349C
Filed: August 30, 2019

| | |
|---|---|
| DAVID STEVEN BRAUN,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>        Defendant. | <u>Pro Se</u> Plaintiff; Motion to Dismiss; Subject Matter Jurisdiction; Privacy Act; 28 U.S.C. § 1494; Administrative Procedures Act. |

**David S. Braun**, pro se, Gallatin Gateway, MT.

**Mollie L. Finnan**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were **Martin F. Hockey, Jr.**, Deputy Director, Commercial Litigation Branch, Civil Division, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, Civil Division, and **Joseph H. Hunt**, Assistant Attorney General, Commercial Litigation Branch, Civil Division.

## OPINION

**HORN, J.**

### FINDINGS OF FACT

On March 6, 2019, pro se plaintiff David Steven Braun filed a complaint in the United States Court of Federal Claims asserting numerous and varied allegations against multiple government agencies. In the 78 pages of exhibits attached to his complaint, plaintiff includes correspondence with various governmental agencies and filings from plaintiff's prior suits in federal courts. Plaintiff includes two letters to the National Security Agency (NSA), cited in the complaint, in which plaintiff alleges, among other things, that he has been subjected to varied, unrelated experiences with unspecified governmental agencies, "including mikies,[1] wire taps, currently cell phone gps servalance, email problems, etc." and "forced drugs" causing "several medical events, due to say Mikes."[2]

---

[1] Plaintiff alleges on numerous occasions in his filings and exhibits submitted to this court in the above captioned case that he has been "milked" or "pored several Mikes." Plaintiff appears to refer to what he describes as a "drug" that "seams to dull long term memory" and "makes you very lethargic."

[2] Capitalization, grammar, punctuation, and other errors quoted in this Opinion are as they originally appear in plaintiff's submissions to this court.

Plaintiff also alleges in what he terms a motion for a preliminary injunction, filed on the same date as the complaint, that he has been subject to "a large quantity of strange speed tickets, traffic violations that occurred over half off the Western United states, and perpetual and obvious intentionally created service problems with email, phone, cell etc."

In addition to the many confused, and difficult to follow, allegations in his complaint, plaintiff lists a "Claim Number 1" and a "Claim Number 2." Plaintiff alleges that "Claim Number 1" "is a result of the NSA [National Security Agency] denying a record request . . . . The records that were not furnished buy the agency were results off requested investigations [by plaintiff] from the Military intelligence facility." In "Claim Number 1," plaintiff contends that, in response to plaintiff's "exhibited record request, the NSA, through their FOIA [Freedom of Information Act] office failed to comply and produce the requested records." Plaintiff asserts that the "requested records" "would halve implicated a third party in multiple instances, including illegal wire tapping and surveillance, and engaging in plain closed military intelligence activities on American Civilians on American Soil." Plaintiff attaches as an exhibit to his complaint a letter, dated, April 4, 2013, labeled "Privacy act request, request for help from NSA," which plaintiff claims to have sent to the NSA.[3] In the April 4, 2013 letter, plaintiff stated that "[t]here were allot off drugs forced on me, without a court order, Haldol etc. I have no criminal record. If you can't find a record off this, please let me know."

Plaintiff also attaches to his complaint a letter dated April 9, 2013, which appears to be on letterhead titled: "NATIONAL SECURITY AGENCY CENTRAL SECURITY SERVICE." The April 9, 2013 letter, addressed to plaintiff in a format suggesting it written by Pamela A. Phillips, who indicated she was the by Chief of the "FOIA/PA Office." The letter states:

> The classified nature of the National Security Agency's efforts prevents us from either confirming or denying the existence of intelligence records responsive to your request, or whether any specific technique or method is employed in those efforts. The fact of the existence or non-existence of responsive records is a currently and properly classified matter in accordance with Executive Order 13526, as set forth in Subparagraph (c) of Section 1.4. Thus, your request is denied pursuant to the first exemption of the FOIA, which provides that the FOIA does not apply to matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign relations and are properly classified pursuant to such Executive Order.

---

[3] In the exhibits to plaintiff's complaint and what he labels as a motion for a preliminary injunction, plaintiff includes numerous requests for records and information sent to governmental agencies, including five requests sent to the Federal Bureau of Investigation (FBI) and to the Department of Justice (seeking appeals of FBI responses to plaintiff's inquiries), eight requests sent to the Central Intelligence Agency (CIA), and five requests sent to the NSA. Plaintiff also asserts that he "spoke with a Special Agent in the Parking lot of Fort Mead Maryland," which triggered a "base incident report."

> Moreover, the third exemption of the FOIA provides for the withholding of information specifically protected from disclosure by statute. Thus, your request is also denied because the fact of the existence or non-existence of the information is exempted from disclosure pursuant to the third exemption.

According to plaintiff's complaint, had the NSA furnished the "record request" in full, "you would halve detailed result of requested investigation that you could take to an appropriate court and request a summary Judgment for what ever entity was found to halve committed the acts as a result of the NSA's investigation." Due to the NSA's alleged withholding of the agency's "records" requested by plaintiff, plaintiff claims that "the Agency/US Government assumes the Liability" for any "civil implications" under "the Civil clause off the Privacy Act 5 USC 552a(g)(1)(b)." Under "Claim Number 1," plaintiff requests relief of "750,000,000" in damages, which plaintiff suggests "could easily be amortized over a ten year period." According to plaintiff, the $750,000,000.00 is to compensate for "Pain, damage, as well as the amount off time that has been put in buy the plaintiff to fully correct these issues."

Plaintiff's "Claim Number 2" allegedly "arises out off the Plaintiff mechanical failure of a Civil Background Check" "due to some data point/entry in at least one of the national database," so that "Plaintiff no longer has the right to sue civilly" and "prevents any kind off out of court or administrative settlement." Plaintiff asserts that the alleged "Datapoint" "was created illegally, I.E. either buy forgery or falsification of records and is highly illegal." As part of plaintiff's confused allegations regarding the alleged "Datapoint," plaintiff states that "under 1491(a)(2) to provide an entire remedy, this section clearly gives this court the Jurisdiction to issue any order directing the correction of any applicable records." Regarding the potential origin of the "Datapoint," plaintiff asserts that "[i]t is my understanding that there are several legal changes off status that might as an ancillary issue prevent this court from hearing any civil claims, regardless of what the claim is for a specific Plaintiff." Further, plaintiff asserts:

> The plaintiff is unaware off any reason he should be failing this background check. I am not currently in prison or halve any open criminal cases. I also halve never been employed or signed an employment contract buy the US Government or the US Military. It is the Plaintiff understand that this is false data point was put in the database deliberately, and upon response to this complaint and this claim, the US Government will be unable to provide any believable documentation to substantiate this failure, I.E. such as a military employment contract and service record. It just does not exist. It is the Plaintiff experience that once this statement is maid, their will be nothing presented to the court that would indicated that there is an issue as to why this law suite cannot proceeded.
>
> This point is in at least one national database that is maintained buy the US Government. I am not sure exactly if this is the FBI [Federal Bureau of

3

> Investigation] West Virginia Data Center, the DOD [Department of Defense] has the Man Power Data Center. It is unclear who actually administers this database check. It is done buy the apposing counsel. Basically they take the Plaintiff name and run it through the database. Normally I guess there is no problem, and the lawyer is free to proceeded as they see fit. In the case of the Plaintiff, the database fails to clear me for civil activity.

Plaintiff alleges that this "Datapoint" has caused him "great harm" and seeks to recover "for the harm plus the effort, the stress the damage to [his] life, and the time required and put in to correct the problem, and make the plaintiff whole going forward." Plaintiff's "Claim Number 2" requests both a "monetary Judgment" of "500,000 a month for life" to compensate him for the impact of the alleged undefined "Datapoint," as well as a court order "removing the datapoint or modifying it in such a way that it allows for among other things a normal civilian civil and hiring process."

Plaintiff also filed a motion for what he termed a preliminary injunction in this court on March 6, 2019, requesting the court order to remove or modify the alleged "Datapoint" "injunctively and/or . . . on a Permanent Basis." According to plaintiff in his purported motion for a preliminary injunction, "[s]ince early 2013, the plaintiff became aware and has been using quite a bitt of docket time in federal court to terminate and correct some illegal electronic surveillance buy one off the Federal Government Military intelligence agencies." In his purported motion for a preliminary injunction, plaintiff alleges that his identity has been confused with the "backgrounds" of "two fictious residents" who are "actually real people, they are real government ID's with real criminal histories. They halve actually been deliberately added to a federal postal database. They would be viewed as brothers and occupants off my rule Montana ski condo." Plaintiff also asserts in his purported motion for a preliminary injunction:

> The criminal background off the other two Fictious brothers, in conjunction with this datapoint attached to the Plaintiffs social security number was used to obtain and convince several public telecommunication companies such as Google, Verizon, Yahoo and my local copper phone company to export on a feed, my electronic information.

Plaintiff requests that the court "remove or modify" the "Datapoint" and "terminate and correct some illegal electronic surveillance buy one off the Federal Government Military intelligence agencies."

Defendant filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) (2018) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction. Defendant argues that any action brought pursuant to the Privacy Act of 1974, as amended, 5 U.S.C. § 552a(g)(1) (2018), must be brought in federal District Court and that the United States Court of Federal Claims lacks subject matter jurisdiction to adjudicate any claims pursuant to the Privacy Act. Defendant also filed a response to plaintiff's purported motion for a preliminary injunction, in which

<a/>

defendant argues that plaintiff's request for a preliminary injunction fails "because the Court's equitable authority does not encompass his claims."

Plaintiff filed a reply in support of his purported motion for a preliminary injunction, incorporating what plaintiff alleges are "several additional statues that give this court Jurisdiction in addition to 5 USC 1491(a »."[4] Plaintiff's reply alleges that "since the Plaintiff is beings legally wronged, or at least adversely affected, I think you can justify a claim under 1491(a) simply for the record correction in that 5 U.S. 702 gives you the right to proceeded directly into court." Additionally, plaintiff argues that this submission to the NSA on September 16, 2015 "constitutes a proper submission for settlement as referenced under 28 U.S. Code 1494(1)." According to plaintiff, "over three years halve elapsed without settlement and no suit has been brought by the United States. Their for I believe this court has the right to proceeded and adjudicate this claim as directed under 28 U.S. Code 1494."

Plaintiff also filed a response to the motion to dismiss, along with a motion for appointment of counsel.[5] In his response to the motion to dismiss, a substantial portion appears to be copied directly from plaintiff's reply to defendant's response to the purported motion for a preliminary injunction, plaintiff argues:

> The US Government, has produced nothing or even tried to argue that there is any reason why the Plaintiff is not entitled to a submission to the OMB [Office of Management and Budget], or a normal civil process . . . . I submit that the US Government has consistently failed to act in an official capacity of color of legal authority, and am request the court intervene and correct this situation.

---

[4] The statute referenced by plaintiff, "5 USC 1491(a)," does not exist. Moreover, in his confused reply to defendant's response to plaintiff's motion for a preliminary injunction, plaintiff dedicates over half a page to discussing a speeding violation he was given the day following the initial filing of his complaint.

[5] In plaintiff's motion for appointment of counsel, plaintiff contends that "[a]pparently, this database entry, cause the attorneys not to want to represent me in a civil situation. This in it self a violation off my rights." The court notes that "civil litigants generally have no right to free legal aid in civil lawsuits." Synergy Assocs. v. Sun Biotechnologies, Inc., 350 F.3d 681, 684 (7th Cir. 2003) (citing Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co., 310 F.3d 537, 540 (7th Cir. 2002) ("Litigants have no right to free legal aid in civil suits.")). Therefore, plaintiff is not entitled by right to receive assistance of counsel when appearing before the United States Court of Federal Claims. See Arnesen v. Principi, 300 F.3d 1353, 1360 (Fed. Cir. 2002) (noting that civil litigants generally have no right to appointed counsel absent a potential loss of personal freedom (citing Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27 (1981))); Heuss v. United States, 75 Fed. Cl. 636, 637 (2007) ("Plaintiff does not have the right to assistance of counsel in this matter before the Court of Federal Claims." (citing Lariscey v. United States, 861 F.2d 1267, 1270-71 (Fed. Cir. 1988))).

Thereafter, defendant filed a reply in support of its motion to dismiss and reiterated its argument that plaintiff's complaint "should be dismissed because the Court does not possess jurisdiction to entertain his claims for alleged violations of section 552a(g)(1) of the Privacy Act of 1974, as amended (5 U.S.C.)." Defendant's reply also asserts that plaintiff's "opposition largely restates his allegations in additional detail," but "this detail does not change the nature of the claims." Responding to the additional statutory citations alleged by plaintiff in the "Response to Motion to Dismiss," defendant contends that 28 U.S.C. § 1491(a) (2018) fails to provide a "substantive basis for jurisdiction in this Court," and plaintiff is precluded from bringing claims under "5 U.S.C. §§ 702 and 703" before this court." According to defendant's reply, "[i]n addition, Mr. Braun previously brought these arguments before the [United States Court of Federal Claims] in an earlier-filed suit." See Braun v. United States, No. 18-1521C.

After defendant filed its reply to the motion to dismiss, plaintiff filed what he describes as a "Motion For Guidance" in which plaintiff contends that defendant's "response" "did not in any way present any argument as to why 28 USC 1494 did not apply, and there is a injunctive motion and a request in the second claim for the court to consider quit a bit off non monetary issue." Plaintiff further alleges that "[f]rom my previous experiences in the district courts, their has been a need for further submission to get the issues corrected. I.E. on two separate occasions I had to make written request to the NSA to assists and correct issues that had been found to be in the military."

Defendant filed a response to plaintiff's "Motion For Guidance" addressing plaintiff's assertion that 28 U.S.C. §1494 "provides an alternative basis for this Court to exercise jurisdiction over his claims." According to defendant, "Section 1494 grants [this Court] jurisdiction to determine the amount, if any, due to or from the United States by reason of any unsettled account of any officer or agent of, or contractor with, the United States." (alteration in original) (quoting Kalos v. United States, 748 F. App'x 993, 994 (Fed. Cir. 2018)) (internal quotation marks omitted). According to defendant's response, however, "Mr. Braun does not appear to contend, or to allege any facts to support, that he is or has ever been an officer, agent, contractor, or guarantor of a contractor, so as to bring him within the class of persons to invoke section 1494 pursuant to the statute's plain terms." As such, defendant argues that "any claims now based on section 1494 should be dismissed for lack of jurisdiction or, alternatively, for failure to state a claim." Plaintiff then filed a difficult to follow "Reply to Response to Motion for Guidance" requesting that "the court not seriously consider the new legal argument that 28 USC 1494 does not give this court Jurisdiction over at least the First Claim in the law suite." Plaintiff asserts that he "their for request that the court consider [defendant's] argument as untimely and not consider it in its deliberation." Plaintiff's filing seems to assert that his claims fall under 28 U.S.C. § 1494, not because of his supposed status as "an officer, agent or contractor of the United States, but under 31 U.S Code 3702, claims off my type are settled buy the Director of the Office and Management and Budget. And I believe he qualifies as an officer, agent or contractor with the United States Government." Plaintiff then proceeds to allege "in the governments untimely and comical remarks, they halve argued that 28 USC 1494 does not apply, but I you make this argument, then you would now halve to present

6

a believable reason as to why 5 USC 703 does not apply." Further, plaintiff states that "703 clearly gives the right to proceeded in court and review any agency action in a civil or criminal proceeding . . . . [T]here is clear sub paragraph that states this would also include agency inaction." Plaintiff also alleges "there is a large request before the court to xerert it teeth and correct the records that are causing the submissions under 3702 to not be responded to. This gives jurisdiction to this claim under 702 in that it is requests the court consider non monetary issues."

In addition to repetitive and disjointed and unproductive filings in this case, the court notes that it appears that plaintiff has filed numerous lawsuits in federal courts on a variety of issues, many revolving around similar allegations of illegal surveillance, failure to provide him with requested information, and governmental interference. Plaintiff's previously filed suits include one additional complaint filed in the United States Court of Federal Claims and multiple complaints in Federal District Courts, including the United States District Court for the District of Montana, the United States District Court for the District of Columbia, and the United States District Court for the Northern District of California. Plaintiff's earlier suit filed in the United States Court of Federal Claims, Braun v. United States, Case No. 18-1521C, alleged that federal agencies had violated plaintiff's "right to due process by their failure to provide him with the complete results of any investigation each agency undertook pursuant to Plaintiff's Privacy Act and FOIA requests." Braun v. United States, No. 18-1521C, slip op. at 2 (Fed. Cl. Mar. 11, 2019). The Judge in Case No. 18-1521C granted defendant's motion to dismiss, finding no jurisdiction over plaintiff's Fifth and Fourteenth Amendment claims because they were not "money-mandating," as well as finding no jurisdiction "over Plaintiff's claims of identity theft, negligence, and invasion of privacy, as this Court lacks jurisdiction [over] claims sounding in tort." Braun v. United States, No. 18-1521C, slip op. at 3. Plaintiff appealed this decision to the United States Court of Appeals for the Federal Circuit, which subsequently dismissed plaintiff's appeal for failure to prosecute, as plaintiff neither paid the filing fee nor filed a brief. See Braun v. United States, No. 19-1711 (Fed. Cir. June 28, 2019).

Plaintiff also filed a complaint in the United States District Court for the District of Montana pursuant to 5 U.S.C. § 552a(g)(1), demanding "monetary damages from the [NSA] for its alleged failure to disclose an extensive investigation into Braun's daily life and its alleged involvement in his uninvited psychiatric treatment." See Braun v. Nat'l Sec. Agency, No. 6:15-0018, 2015 WL 12591720, at *1 (D. Mont. Oct. 30, 2015). The United States District Court for the District of Montana in Braun v. National Security Agency concluded:

> NSA's sovereign immunity has not been waived. Braun brings his claim under the Privacy Act, which provides for limited remedies. The Court may order NSA to order the production of documents; it may also issue as damages "reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed." § 552a(g)(3)(A), (B). The Privacy Act waives immunity only to the extent of the expressly allowed damages; sovereign

7

> immunity is not waived as to Braun's claim for $750,000 in damages. Braun's objection requesting further time to seek waiver cannot succeed where the statute unequivocally states the extent of waiver.
>
> Nor may Braun proceed to seek the remedies allowed by statute. Braun has failed to state a claim upon which relief may be granted. Following Braun's request for records, NSA produced all records required under the Privacy Act. NSA's invocation of exemptions expressly provided under § 552a(b) and (k) of the Privacy Act cannot give rise to a cause of action under subsection (g) of the same act. Braun's objection does not cure his initial failure to state a claim upon which relief may be granted because he has not asserted any basis in law or fact for an argument against application of the statutory exemptions.

Braun v. Nat'l Sec. Agency, 2015 WL 12591720, at *1. The United States District Court for the District of Montana entered judgment in favor of the government on November 2, 2015. Braun v. Nat'l Sec. Agency, No. 6:15-0018 (D. Mont. Nov. 2, 2015).

Plaintiff also filed suit in the United States District Court for the District of Columbia, asserting that "[i]n other suites the Plaintiff has been illegally wiretapped. It is also possible that [the 'datapoint'] added in gaining access to the Plaintiffs electronics." See Complaint at 2, Braun v. Fed. Bureau of Investigation, No. 18-2145 (D.D.C. Sept. 14, 2018). Mr. Braun cited to the Freedom of Information Act and the Privacy Act and took issue with the government's responses to his requests for records searches. On July 25, 2019, the United States District Court for the District of Columbia granted defendant's motion for summary judgment and denied Mr. Braun's motion for summary judgment. See Braun v. Fed. Bureau of Investigation, No. 18-2145, 2019 WL 3343948, at *7 (D.D.C. July 25, 2019).

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl.

249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Hale v. United States, 143 Fed. Cl. 180, 184 (2019) ("[E]ven pro se plaintiffs must persuade the court that jurisdictional requirements have been met." (citing Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004))); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); see also St. Bernard Parish Gov't v. United States, 916 F.3d 987, 992-93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even sua sponte, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (citing Foster v. Chatman, 136 S. Ct. 1737, 1745 (2016)); Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007). The Tucker Act, 28 U.S.C. § 1491 (2018), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); see also United States v. Mitchell, 463 U.S. 206, 216 (1983); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United

States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Jackson v. United States, 143 Fed. Cl. at 245. In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The Ontario Power Generation, Inc. court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see

10

also <u>United States v. White Mountain Apache Tribe</u>, 537 U.S. at 472; <u>United States v. Mitchell</u>, 463 U.S. at 217; <u>Blueport Co., LLC v. United States</u>, 533 F.3d 1374, 1383 (Fed. Cir. 2008), <u>cert. denied</u>, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See <u>United States v. Navajo Nation</u>, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (<i>e.g.</i>, statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" <u>Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.</u>, 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting <u>Greenlee Cnty., Ariz. v. United States</u>, 487 F.3d at 876); see also <u>N.Y. & Presbyterian Hosp. v. United States</u>, 881 F.3d at 881; <u>Fisher v. United States</u>, 402 F.3d at 1173 (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); <u>Jackson v. United States</u>, 143 Fed. Cl. at 245 ("If the claim is not based on a 'money-mandating' source of law, then it lies beyond the jurisdiction of this Court." (citing <u>Metz v. United States</u>, 466 F.3d 991, 997 (Fed. Cir. 2006)).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007) (citing <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 508 n.1 (2002)))); see also <u>Frankel v. United States</u>, 842 F.3d 1246, 1249 (Fed. Cir. 2016) ("In deciding a motion to dismiss, a court is required to accept as true all factual allegations pleaded." (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009))); <u>Fid. & Guar. Ins. Underwriters, Inc. v. United States</u>, 805 F.3d 1082, 1084 (Fed. Cir. 2015); <u>Trusted Integration, Inc. v. United States</u>, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." <u>Holley v. United States</u>, 124 F.3d 1462, 1465 (Fed. Cir.) (citing <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 9-10 (1983)), reh'g denied (Fed. Cir. 1997); see also <u>Klamath Tribe Claims Comm. v. United States</u>, 97 Fed. Cl. 203, 208 (2011); <u>Gonzalez-McCaulley Inv. Grp., Inc. v. United States</u>, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2019); Fed. R. Civ. P. 8(a)(1), (2) (2019); see also <u>Ashcroft v. Iqbal</u>, 556 U.S. at 677-78 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555-57, 570). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." <u>Bradley v. Chiron Corp.</u>, 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also <u>McZeal v. Sprint Nextel Corp.</u>, 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); <u>Briscoe v. LaHue</u>, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not

withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. at 190. As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

In its motion to dismiss for lack of subject matter jurisdiction, defendant alleges that "Mr. Braun asserts that he is a civilian (not a military serviceman or veteran) who is asserting two claims pursuant to section 552a(g)(1) of the Privacy Act of 1974, as amended (5 U.S.C.). 'Claim 1' seeks monetary damages related to the Government's alleged withholding of documents. 'Claim 2' seeks to compel production and correction of agency records and money damages."

As noted above, plaintiff alleges that "Claim Number 1" "is a result of the NSA denying a record request . . . . The records that were not furnished buy the agency were results off requested investigations [by plaintiff] from the Military intelligence facility." In "Claim Number 1," plaintiff contends that, in response to plaintiff's "exhibited record request, the NSA, through their FOIA [Freedom of Information Act] office failed to comply and produce the requested records." Plaintiff asserts that the "requested records" "would halve implicated a third party in multiple instances, including illegal wire tapping and surveillance, and engaging in plain closed military intelligence activities on American Civilians on American Soil." Due to the NSA's alleged withholding of the agency's "records" requested by plaintiff, plaintiff claims that "the Agency/US Government assumes the Liability" for any "civil implications" under "the Civil clause off the Privacy Act 5 USC 552a(g)(1)(b)." As also noted above, plaintiff's "Claim Number 2" in the case before this court focuses on the existence of an unidentified "Datapoint" in a federal database. In the above-captioned case, in support of "Claim Number 2," plaintiff alleges that the "Datapoint" causes a "mechanical failure of a Civil Background Check" that "fails to clear [plaintiff] for civil activity" and "prevents any kind off out of court or administrative settlement." Plaintiff also contends that "I halve tried to ask them, who exactly supports these systems, who would contact about this, I.E. is this the FBI. The DoD has several datacenters, they are simply un-responsive. They refuse to answer any questions about it."

Plaintiff's allegations in both "Claim Number 1" and "Claim Number 2" in the above-captioned complaint allege claims under the Privacy Act, 5 U.S.C. § 552a(g)(1). The Privacy Act, 5 U.S.C. § 552a(g)(1), provides that "the district courts of the United States shall have jurisdiction" over civil actions concerning the relevant statute. See 5 U.S.C. § 552a(g)(1). "Although the Privacy Act creates a civil cause of action for monetary damages, the Act expressly vests jurisdiction for such claims in the United States District Courts." Parker v. United States, 77 Fed. Cl. 279, 291 (2007) (citing 5 U.S.C.

§ 552a(g)(1)), aff'd, 280 F. App'x 957, 958 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2008). "The Federal Circuit has clearly held . . . that this court lacks jurisdiction to consider Privacy Act claims." Ghaffari v. United States, 125 Fed. Cl. 665, 667 (2016) (quoting Bush v. United States, 627 F. App'x 928, 930 (Fed. Cir. 2016) (citing Treece v. United States, 96 Fed. Cl. 226, 232 (2010))); see also Rebish v. United States, 120 Fed. Cl. 184, 188 (2016) ("To the extent that Mr. Rebish intended to allege that the Bureau committed violations of the Privacy Act, jurisdiction over such a claim would lie in district court, not the Court of Federal Claims." (citing 5 U.S.C. § 552a(g)(1))); Madison v. United States, 98 Fed. Cl. 393, 395 (2011); Treece v. United States, 96 Fed. Cl. at 232; Stephanatos v. United States, 81 Fed. Cl. 440, 444-45 (2008).[6] Any claims that plaintiff wishes to pursue under the Privacy Act can only be brought in a District Court, and cannot be brought in this court. The court, therefore, lacks jurisdiction over plaintiff's alleged claims under the Privacy Act.[7]

Notwithstanding the above, plaintiff asserts that "28 U.S. Code 1494(1)" grants this court jurisdiction over his claims because following his submission to the NSA for settlement, "over three years have elapsed without settlement and no suit has been brought by the United States." From this lack of settlement, plaintiff argues, "this court has the right to proceeded and adjudicate this claim as directed under 28 U.S. Code 1494." In plaintiff's "Motion For Guidance," plaintiff alleges that defendant "did not in any way present any argument as to why 28 USC 1494 did not apply." Defendant's subsequent response to plaintiff's "Motion For Guidance" contends that "[t]o the extent [plaintiff] now seeks to assert claims based on section 1494, such claims should be dismissed for lack of jurisdiction or, in the alternative, for failure to state a claim." Defendant argues that 28 U.S.C. § 1494 applies to an unsettled account of an officer, agent, or contractor of the United States. Defendant alleges, however, that "Mr. Braun

---

[6] In an unpublished decision, the United States Court of Appeals for the Federal Circuit stated that, "while 'the Privacy Act creates a civil cause of action for monetary damages, the Act expressly vests jurisdiction for such claims in the United States District Courts.'" Bias v. United States, 722 F. App'x 1009, 1014 (Fed. Cir. 2018) (quoting Parker v. United States, 77 Fed. Cl. at 291 (citing 5 U.S.C. § 552a(g)(1))); see also Conner v. United States, 641 F. App'x 972, 975 (Fed. Cir. 2016) ("We also agree with the [United States Court of Federal Claims] that it lacks jurisdiction over Privacy Act claims . . . because the federal district courts possess exclusive jurisdiction over such matters." (citing 5 U.S.C. § 552a(g)(1))). The Federal Circuit in Bias also observed that the Privacy Act fails to "contain[] money-mandating provisions that would give the Court of Federal Claims jurisdiction over claimed violations of the Act." Bias v. United States, 722 F. App'x at 1014 (citing Frazier v. United States, 683 F. App'x 938, 940 (Fed. Cir. 2017)).

[7] The court notes that in addition to the court lacking jurisdiction over the plaintiff's claims, given previously filed case and prior decisions on the same subject matter and on the same operative facts, in other federal courts, including Braun v. National Security Agency, 2015 WL 12591720 and Braun v. Federal Bureau of Investigation, 2019 WL 3343948, Mr. Braun may also be prevented from bringing his claims in this court under the doctrine of res judicata and 28 U.S.C. § 1500 (2018).

does not appear to contend, or to allege any facts to support, that he is or has ever been an officer, agent, contractor, or guarantor of a contractor, so as to bring him within the class of persons to invoke section 1494 pursuant to the statute's plain terms."

Under Section 1494, this court has "jurisdiction to determine the amount, if any, due to or from the United States by reason of any unsettled account of any officer or agent of, or contractor with, the United States," provided (1) claimant applies to the proper department for settlement, (2) three years have elapsed since plaintiff's application, and (3) claimant has not previously brought a suit on the claim in the United States. See 28 U.S.C. § 1494. The United States Court of Federal Claims lacks jurisdiction if plaintiff "fails to allege sufficient facts to establish jurisdiction, pursuant to 28 U.S.C. § 1494." Striplin v. United States, 100 Fed. Cl. 493, 498 (2011) (citing RCFC 12(b)(1)); see also Watson v. United States, 86 Fed. Cl. 399, 402 (2009) (holding if plaintiff is unable to meet the requirements of Section 1494, the United States Court of Federal Claims does not have jurisdiction over the claim)).[8] Plaintiff cannot prevail on the basis of 28 U.S.C. § 1494 because plaintiff has not alleged that he is "officer or agent of, or contractor with, the United States." On multiple occasions in his filings before this court, plaintiff expressly denies any employment relationship with the government: "I also halve never been employed or signed an employment contract buy the US Government or the US Military." Thus, plaintiff cannot successfully raise a claim under Section 1494 and, to the extent plaintiff attempts to assert his claims under 28 U.S.C. § 1494, this court must dismiss plaintiff's claims for lack of jurisdiction.

Plaintiff further alleges that this court has jurisdiction over plaintiff's claims under the Administrative Procedure Act (APA) in sections 702 and 703 until Title 5. See 5 U.S.C. §§ 702, 703 (2018). According to plaintiff, "703 clearly gives the right to proceeded in court and review any agency action in a civil or criminal proceeding" and, further, plaintiff asserts that "there is a large request before the court to xerert it teeth and correct the records that are causing the submissions under 3702 to not be responded to. This gives jurisdiction to this claim under 702 in that it is requests the court consider non monetary issues."

Defendant responds that plaintiff's "APA claims are outside this Court's limited jurisdiction because the APA does not authorize an award of money damages at all; to the contrary, section 10(a) of the APA, 5 U.S.C. § 702, specifically limits the Act to action seeking relief other than money damages." (internal quotation marks omitted) (quoting Wopsock v. Natchees, 454 F.3d 1327, 1333 (Fed. Cir. 2006)). Section 703 of the

---

[8] Certain decisions in the United States Court of Federal Claims have concluded that plaintiff has either failed to state a claim upon which relief can be granted or lacks standing to make a claim pursuant to Section 1494, instead of finding a lack of jurisdiction. See, e.g., Roberson v. United States, 115 Fed. Cl. 234, 241 (2014) (holding that if plaintiff fails to meet any of the statute's criteria or if plaintiff does "not allege[] that [he or] she is an officer, agent of, or contractor with the United States," "the court must dismiss plaintiff's claims under 28 U.S.C. § 1494 for failure to state a claim upon which relief can be granted").

Administrative Procedure Act (APA), 5 U.S.C. § 703, "entitles a person legally wronged by agency action to seek judicial review, thus waiving sovereign immunity of the United States." Strand v. United States, 138 Fed. Cl. 633, 638 (2018) (citing 5 U.S.C. § 703; Weaver v. United States, 46 Fed. Cl. 69, 76 (2000)). Under Section 702 of the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The relief authorized under the APA, however, is not an award for money damages, "to the contrary, section 10(a) of the APA, 5 U.S.C. § 702, specifically limits the Act to actions 'seeking relief other than money damages.'" Wopsock v. Natchees, 454 F.3d at 1333 (citation omitted in original). "Consequently, the Court of Federal Claims lacks jurisdiction over APA claims." Albino v. United States, 104 Fed. Cl. 801, 815 (2012) (citing Martinez v. United States, 333 F.3d 1295, 1303, 1314 (Fed. Cir. 2003)). As such, the "Federal district courts—not the Court of Federal Claims—are the proper fora for APA actions." Stroughter v. United States, 89 Fed. Cl. 755, 762-63 (2009) (citing 5 U.S.C. § 703; Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005)); see also Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (affirming the United States Court of Federal Claims holding "that it lacks the general federal question jurisdiction of the district courts, which would allow it to review the agency's actions and to grant relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (1994)"); Allen v. United States, 140 Fed. Cl. 550, 563 (2018) (citing Stroughter v. United States, 89 Fed. Cl. at 763); Amber Res. Co. v. United States, 68 Fed. Cl. 535, 544 (2005), aff'd, 538 F.3d 1358 (Fed. Cir. 2008) ("In the absence of a contrary statute, a challenge to administrative discretion can only be reviewed in district court pursuant to the APA."). Thus, to the extent that plaintiff asserts claims under 5 U.S.C §§ 702 and 703, such APA claims must be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

MARIAN BLANK HORN
Judge